IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Darrell Williams, | ) | |
| | ) | Civil Action No. 8:07-3661-CMC-BHH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Sgt. NFN Jackson, and | ) | |
| Warden Alvin S. Glenn | ) | |
| Detention Center, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants' motion for summary judgment (Dkt. # 40) and the plaintiff's motion for summary judgment (Dkt. # 52).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

The plaintiff brought this action on November 8, 2007, seeking damages for alleged civil rights violations. On June 4, 2008, the defendants filed a motion for summary judgment. By order filed June 5, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure

and the possible consequences if he failed to adequately respond to the motion.  On August 18, 2008, the plaintiff filed his own motion for summary judgment.[1]

## I. FACTS

In his complaint, the plaintiff alleges that during three separate disciplinary proceedings, he was not present at the hearings and did not receive a copy of the charge papers.  (Compl. at 3.)  He further alleges the disciplinary hearing officer ("DHO") heard no testimony and relied on the incident reports.  (*Id*.)  He specifically alleges that "the evidence [was] not substantial to sustain the DHO finding of guilt."  (*Id*.)  He alleges as a result of his disciplinary sanctions, he was confined to his cell for seventy (70) days and denied recreation.  (*Id*.)  The plaintiff also states an unspecified amount of money was taken from his account as a result of his disciplinary conviction.

The plaintiff also alleges the law library will not provide legal books to inmates in the Special Housing Unit ("SHU").  The plaintiff alleges the detention center is double celling inmates in SHU and that, while double celling may be reasonable in the regular population, in SHU with confinement twenty-four (24) hours a day, seven (7) days a week, it creates an unsafe condition for both the inmates and staff.  (Compl. at 3.)  Finally, the plaintiff alleges that he has filed a grievance on every issue raised in his

---

[1]The undersigned notes that although the plaintiff did not file a separate response to the defendants' summary judgment motion, a review of the plaintiff's summary motion reveals he specifically addressed the defendants' arguments raised in their motion for summary judgment.  (*See*, e.g., Pl.'s Mem. Supp. Summ. J. Mot. at 2.)  Accordingly, the undersigned find the issues have been fully briefed and are ready to be ruled upon.

complaint, but the defendants have responded to only one grievance, the one regarding legal materials in SHU.  (Compl. at 4.)

In his amended complaint, the plaintiff added a claim alleging the defendants have violated his religious rights.  (Dkt. # 7 - Am. Compl. at 2.)  He alleges he asked for a no meat or vegetarian meal and his request was denied.  (*Id.*)  He states that he was told that the medical staff must approve such a meal, but the medical staff told him they do not handle these requests. (*Id.*)  In his amended complaint, the plaintiff also alleges that "the detention center [does not allow] Muslims to obtain prayer rugs for prayer and some officers do not [allow] Muslims to attend Friday service in the dorm areas."  (*Id.*)

The plaintiff is seeking declaratory relief stating the defendants have violated his constitutional rights and injunctive relief in the form of an order requiring the defendants to stop double celling inmates in SHU, to allow inmates in SHU recreation time, to provide legal books in SHU, and to allow all inmates to appear at disciplinary hearings. (Compl. at 5.)  He is also seeking compensatory damages and expungement of all references to his hearing and the return of money taken from his account.  (*Id.*)

## II. **APPLICABLE LAW**

Rule 56 of the Federal Rules of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

3

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

4

## III. <u>DISCUSSION</u>

**A. Mootness**

Initially, the undersigned notes that the plaintiff was recently transferred to the Lee Correctional Institution.  (Dkt. # 56 - Notification of Change of Address).  Because the plaintiff has been transferred from the ASGDC, the plaintiff's claims for injunctive and declaratory relief are now moot. *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 249 (4th Cir. 2005)(holding portion of civil rights complaint seeking injunctive relief for jail's practice of charging housing fee rendered moot by detainee's release.  *See also Scurry v. Middleton*, 2007 WL 1068248 at *3 (D.S.C. April 2, 2007) (MBS-BM) (holding upon the plaintiff's release from the detention center, the plaintiff's request for injunctive and/or declaratory relief was moot).

**B.  Exhaustion**

The defendants contend the plaintiff has not exhausted his administrative remedies, except his claims relating to his religious rights.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a §1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such  administrative remedies as are available are exhausted.

In *Porter v. Nussle,* 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.  Further, exhaustion must occur prior to the filing of the lawsuit or it must be dismissed.  *Anderson v. XYZ Correctional Health Services*, 407 F.3d 674, at 683 (4th Cir. 2005).

The ASGDC has a grievance system in place and as part of the process, an inmate can appeal to the Assistant Director or his designee.   (Defs.' Mem. Supp. Summ. J. Mot. Ex.  Kathryn Harrell Aff. ¶ ¶ 27-28. )  In his memorandum, the plaintiff argues the appeals process is inadequate. He alleges that he has adequately appealed his disciplinary convictions.  He cites to the November 26, 2007, inmate request in which he states that he has filed grievances on many things, including his disciplinary charges. The defendants responded to that request by stating that the plaintiff's grievances in general were being answered.  (Pl.'s Mem. Supp. Summ. J. Mot. at 3.)   The defendants did not state that the plaintiff had filed grievances regarding the disciplinary proceedings. The plaintiff does not include any copies of the underlying grievances.

The defendants filed the plaintiff's disciplinary and inmate records as exhibits. (Defs.' Mem. Supp. SUmm. J. Mot. Ex. A.)  His disciplinary record shows that the plaintiff filed an initial grievance on his claim relating to one of his disciplinary proceedings (Ex. A at 4), but there is no evidence he appealed these grievances to the Assistant Director of the ASGDC.   As there is no evidence in the record showing that the plaintiff fully exhausted his administrative remedies, all of the plaintiff's the claims except those

relating to his religious rights should be dismissed. Alternatively, the undersigned recommends dismissal on the merits as discussed below.

## C. Merits[2]

### I. Claims Relating to Disciplinary Proceedings

The plaintiff alleges that during three separate disciplinary proceedings, he was not present at the hearings and did not receive a copy of the charge papers. (Compl. at 3.) He further alleges the disciplinary hearing officer ("DHO") heard no testimony and relied solely on the incident reports. (*Id.*) He specifically alleges that "the evidence [was] not substantial to sustain the DHO finding of guilt." (*Id.*) The defendants contend the plaintiff's claims relating to his disciplinary hearings are barred *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). (Defs.' Mem. Supp. Summ. J. Mot. at 2-3.)

Clearly, the plaintiff is seeking to invalidate his disciplinary convictions. In *Heck*, the Supreme Court held that when a state prisoner seeks damages in a § 1983 suit, the "district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." If so, then the civil rights action under § 1983 must be dismissed. *Heck,* 512 U.S. at ___, 114 S.Ct. at 2372. *See Edwards v. Balisok,* 520 U.S. 641, 646 (1987) (holding that § 1983 claim not cognizable because allegations of procedural defects and a biased hearing officer implied the invalidity of the underlying prison disciplinary sanction). *Edwards* applied *Heck* to a prisoner's challenge

_____

[2]The undersigned notes that on May 16, 2008, the plaintiff filed another action which is currently pending in this court against, inter alia, the defendant Meyers in which he also alleges some of the same or similar claims. *Williams v. Meyers*, et.al., C/A No. 4:08-1864-RBH-TER.

7

to prison disciplinary proceedings that resulted in a deprivation of good time credits. *Edwards*, 520 U.S. at 648, 117 S.Ct. at 1589. *Heck* did not engraft a state exhaustion requirement onto § 1983, but rather concluded that there is no cause of action at all under § 1983 unless the prisoner has proved that his conviction or sentence has been reversed, expunged, invalidated, or impugned by a writ of habeas corpus. *Id.* at ___, 114 S.Ct. at 2373. "These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson,* 544 U.S. 74, 81-82 (2005).

Thus, in challenges to prison procedures, "where success in the action would not necessarily spell immediate or speedier release for the prisoner," § 1983, not habeas corpus, is the appropriate remedy. *Id.* at 81. The question, therefore, is whether success on the plaintiff's claims regarding his prison disciplinary proceedings would "necessarily spell [his] immediate or speedier release." *Id.* Reviewing the plaintiff's disciplinary record, It does not appear that the plaintiff lost any good time credits as result of these disciplinary convictions. (Defs.' Mem. Supp. Summ. J. Mot. Ex. A at 2, 6, and 10.) However, should the plaintiff be seeking an earlier release from confinement based upon the invalidation of his disciplinary convictions, this claim would be barred by *Heck*.

8

In the alternative, the defendants contend that summary judgment should be granted as the plaintiff has failed to establish a constitutional violation regarding the disciplinary proceedings. The undersigned agrees.

It is true that disciplinary hearings which implicate a protected liberty interest demand due process. *See Wolff v. McDonnell*, 418 U.S. 539 (1974). In *Wolff*, the United States Supreme Court held that where a disciplinary hearing affects a liberty interest, inmates must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Wolff,* 418 U.S. at 563-567.

In order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir.1997). When the punishment does not cause the original sentence to be enhanced, protected interests will be generally limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472 (1995)(holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest); *Wolff v. McDonnell*, 418 U .S. 539, 557 (1974).

As noted above, there has been no allegation or representation made to the court that the plaintiff lost any good-time credits as a result of the disciplinary action. Further,

9

the plaintiff has not alleged that the conditions of administrative segregation were atypical.  Rather, the plaintiff alleges that he was denied outdoor recreation for seventy days which has been found not to constitute an atypical deprivation.  *See Beverati*, 120 F.3d at 504 (finding that six-month administrative confinement does not constitute a deprivation of that implicates due process); *Sturkey v. Ozmint*, 2008 WL 4507508 (D.S.C. 2008)(denial of recreation for the duration of his time in administrative segregation - roughly 65 days - does not constitute atypical and significant deprivation). Therefore, the court finds that the plaintiff's time in SHU did not implicate a liberty interest.

The plaintiff also alleges that as a result of a disciplinary conviction, money was deducted from his account.  Reviewing the plaintiff's disciplinary record, it appears that as a result of one of the plaintiff's disciplinary convictions, two dollars ($2.00) was deducted from his commissary account to pay for a stolen food tray. (Defs.' Mem. Supp. Summ. J. Mot. Ex. A. - Pl.'s Disciplinary File at 2.)  In this case, the undersigned cannot find that this penalty posed an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life.  *Henderson v. Commonwealth of VA,* 2008 WL 204480 (W.D.Va. 2008)(holding $12.00 fine is not atypical); *Goodman v. Gilmore*, 2006 WL 1587463 (W.D.Va. 2006)(unpublished)(quoting *Sandin* to hold that fine imposed did not constitute undue hardship beyond the expected conditions of his prison sentence); *Holmes v. Ruiz-Kurtz*, 2006 WL 840316 (W.D.Va. 2006)(unpublished)(holding $12.00 fine did not constitute an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life).

10

Accordingly, the plaintiff's sanctions of placement in SHU and the imposition of a two dollar fine did not impose atypical and significant hardships in comparison to ordinary prison life so as to implicate a liberty interest implicating due process.

Additionally, the violation of disciplinary procedure rules by a prison does not constitute a violation of due process. *See Sandin*, 515 U.S. at 483.  Accordingly, based on the foregoing, the defendants should be granted summary judgment on the plaintiff's claims relating to his disciplinary proceedings.

### ii.  Denial of Religious Freedom Claims

The plaintiff claims that the defendants denied him the right to freely practice his religion by denying him pork-free meals, a prayer rug, and the opportunity to attend weekly prayer services on Fridays.  (Am. Compl. 2.)

A plaintiff bringing a free exercise claim under the Constitution must show that the exercise of his religion has been substantially burdened.  *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989). "To show a free exercise violation, the religious adherent . . . has the obligation to prove that a governmental regulatory mechanism burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates."  *Graham v. Commissioner,* 822 F.2d 844, 850-51 (9th Cir.1987). *Hernandez,* 490 U.S. 680.  With this in mind, each of the plaintiff's allegations regarding his religious freedoms are discussed below.

11

### a. Meals

The plaintiff alleges he is not being served pork-free meals.  It is undisputed that Muslims are forbidden to eat food containing pork.  *See Carroll v. Brown*, 560 F.2d 1177 (4th Cir. 1977).  However, in this case, it appears the defendants have served the plaintiff a diet free of pork as prescribed by his religion.  (Defs.' Mem. Supp. Summ. J. Mot. Ex. - Kathryn Harrell Aff. ¶ 14.)  Other than his own conclusory allegations, the plaintiff has proffered no evidence to contradict the defendants' assertion that the meals served to him were pork-free. *Bebley v. Garrett*, 2008 WL 808685 (W.D. Ark. 2008)(summary judgment granted to defendants where plaintiff has proffered no evidence to contradict defendants' assertion that the food was pork-free). Conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

### b. Friday Prayer Service

In his amended complaint, the plaintiff alleges that "some officers do not [allow] Muslims to attend Friday service in the dorm area."  (Am. Compl. at 2.)   However, the plaintiff did not name any officers.  In his summary judgment motion, the plaintiff states in regard to this claim that it is the Warden's inaction which gives rise to a violation of his rights under this claim.  (Pl.'s Mem. Supp. Summ. J. Mot. at 2.)  Specifically, he states that on December 28, 2007, and again on March 29, 2008, he filed grievances informing the Warden of the officers' failure to follow policy and allow Muslims to attend weekly congregational prayer services. (*Id.*)  However, the only claim raised in this action which was filed on November 8, 2007, and amended on November 30, 2007, is that some unnamed officers did not allow Muslims to attend weekly services.

12

Significantly, a plaintiff may not amend his complaint through arguments in his brief in opposition to summary judgment. *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir.2002); *Church v. Maryland*, 180 F.Supp.2d 708, 732 (D.Md. 2002) (disregarding an allegation that was raised for the first time in plaintiff's affidavit in opposition to defendants' motion for summary judgment); *Marten v. Yellow Freight System, Inc.*, 993 F.Supp. 822, 829 (D.Kan.1998)(finding that a claim not raised in the complaint and initially asserted in a response to a summary judgment motion is not properly before the court.)

Further, it is well-established that a civil rights plaintiff must allege the personal involvement of a defendant to state a claim under 42 U.S.C. § 1983. *See, e.g., Monell v. Dept. of Social Svs.*, 436 U.S. 658, 691-92 (1978). As the plaintiff has not alleged any personal involvement of the named defendants, liberally construing the complaint it appears the plaintiff wishes to hold the defendant Meyers liable in his supervisory capacity.

"Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (citation omitted). To hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed an unreasonable risk of constitutional injury to Plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an

13

"affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994).

The plaintiff did not allege that the defendant Meyers was deliberately indifferent to, or tacitly authorized, any of the alleged actions or inactions.[3]  Further, the plaintiff has also failed to allege that there was a policy or custom that caused him any injury.  *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977).   In fact, the plaintiff states that it is the ASGDC's policy to allow inmates to participate in Friday prayer service.  Accordingly, this claim should be dismissed.

### c.  Prayer Rug

The plaintiff contends his right to religious freedom has been violated because he has been denied a prayer rug.  The defendants state that inmates are provided with a towel and sheets and are free to use their towel or sheets for their prayers.

The rights and protections of the Constitution do not end when a citizen is sentenced to prison. *Turner v. Safley*, 482 U.S. 78, 84 (1987). Imprisonment may limit, but not completely abrogate, a prisoner's right to the free exercise of his religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-49 (1987). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by considerations underlying our penal system."  *Price v. Johnson*, 334 U.S. 266, 285 (1948). For that reason, "when a prison regulation impinges on

---

[3]The actions which the plaintiff refers to in his memorandum and relies upon to establish the defendant Meyers' liability occurred well after the plaintiff amended his complaint.

14

inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

In order to determine if a regulation is "reasonably related to legitimate penological interests," courts look to whether the regulation is rationally related to a legitimate and neutral government objective, whether there are alternative avenues that remain open to the inmates to exercise the right, the impact that accommodating the asserted right would have on other guards and prisoners and on the allocation of prison resources, and whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. *Turner*, 482 U.S. at 89-90. Significantly, the burden is on the prisoner to disprove the validity of the prison regulations at issue. *Overton v. Bazzetta,* 539 U.S. 126, 132 (2003).[4]

The defendants state that due to security concerns and administrative costs, prayer rugs are not allowed at ASGDC. (Harell Aff. ¶ 16.) First, it is unclear that any constitutional right is implicated by the denial of a "prayer rug," as the plaintiff points to no tenet of the Muslim faith that requires that the prayers be performed on a prayer rug as opposed to a prayer towel. *Hudson v. Maloney*, 326 F.Supp.2d 206, 209 n. 2 (D. Mass. 2004). Further, the plaintiff has not asserted that without a prayer rug, he would have no other means of practicing his religion. He also does not argue that the alternatives

---

[4]In *Overton*, the Supreme Court gave conflicting guidance as to whether a court must consider all the *Turner* factors once the court determines that the challenged regulation bears a rational relation to legitimate penological interests. In discussing a restriction on noncontact visits, the Court stated: "We need not attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration because the challenged regulations bear a rational relation to legitimate penological interests. This suffices to sustain the regulation in question." 539 U.S. at 132. However, then the Court went on to specifically discuss the other *Turner* factors. *Id.* at 135-136.

available to a prayer rug (i.e towel and sheets) are insufficient to satisfy the tenets of his

religion.   Finally, the plaintiff has not disputed the defendants' legitimate penological

reasons for their actions.  For these reasons, the plaintiff's claims relating to the denial of

a prayer rug should be dismissed.

### iii.  Denial of Access to Court Claims

In his complaint, the plaintiff alleges the law library will not provide legal books to

inmates in SHU.   In his memorandum supporting his summary judgment motion, the

plaintiff contends this claim is barred by res judicata.  (Pl.'s Mem. Supp. Summ. J. Mot. at

1.)  The plaintiff argues that a state court's order filed May 1, 2008, requires this Court to

find the defendants have violated his constitutional right of access to the courts.  (*Id*.)

The undersigned disagrees.

On March 4, 2008, in a criminal action pending in Richland County, the plaintiff

filed a motion seeking to "[r]equire the Alvin S. Glenn Detention Center (ASGDC) to allow

[the plaintiff] reasonable access to its law library facilities."  On May 1, 2008, Circuit Court

Judge J. Michelle Childs filed an order addressing this motion which reads, in pertinent

part:

> The Court informed [the plaintiff] that it does not control the
> policies or procedures of the ASGDC but would ensure that
> the appropriate supervisory personnel are informed of [the plaintiff's] projected trial date,
> which is currently September 2008. [The plaintiff] was also informed that he may
> continue to make the Court aware of his inability to have reasonable access to such
> facilities.

Generally, res judicata prevents parties from re-litigating causes of action which

were finally decided in a previous suit.  Res judicata is an affirmative defense which may

be used in federal court to give preclusive effect to prior state court judgments.  The

doctrine of res judicata encompasses two similar but distinct concepts: claim preclusion and issue preclusion.

Issue preclusion "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation." *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998). On the other hand, "[r]ules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgment bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented." *In re Varat Enters., Inc.,* 81 F.3d 1310, 1315 (4th Cir. 1996). Since this §1983 action is legally distinct from the state court criminal case, claim preclusion would not apply to this case. However, issue preclusion might apply to the issue at hand. *See also id.* ("Issue preclusion is more narrow and applies when the later litigation arises from a different cause of action. It operates to bar subsequent litigation of those legal and factual issues common to both actions that were 'actually and necessarily determined by a court of competent jurisdiction' in the first litigation.") (*quoting Montana v. United States*, 440 U.S. 147, 153(1979)). "[I]ssue preclusion is proper if the issue in question was presented in a prior adjudicatory proceeding in which the party against whom preclusion is sought had a full and fair opportunity to litigate the issue." *Robinson v. Metts,* 86 F.Supp.2d 557, 562 (D.S.C.1997) (internal citations omitted).

Clearly, the defendants here were not involved in the plaintiff's criminal proceedings and did not have any opportunity to litigate any issues in the plaintiff's criminal trial. Further, the undersigned does not find that the issue of whether the plaintiff

has been denied access to a law library was "actually and necessarily determined by a court of competent jurisdiction" in the plaintiff's criminal proceedings.  Accordingly, issue preclusion would not be proper in this case.

Turning to the merits of the plaintiff's claim, the undersigned finds the plaintiff has failed to establish a denial of access to the courts claim.  Reasonable access by prisoners to both state and federal courts is a guaranteed right, *Ex parte Hull*, 312 U.S. 546 (1941), and states must affirmatively provide inmates with either law libraries or persons trained in law to prosecute habeas and civil rights claims. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977). In order to prevail on an access to courts claim it is not enough for a prisoner merely to state that the legal services available to him are inadequate. "[T]he inmate . . . must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

To state a claim that the defendants have abridged his right of access to the courts, the plaintiff must demonstrate some actual harm or prejudice to his ability to communicate with the court or with counsel.  *Lewis,* 518 U.S. 343 (holding that when an inmate has had access to court, but alleges that officials deprived him of some item necessary for meaningful pursuit of his litigation, such as his already prepared legal materials, the inmate must allege facts showing actual injury or specific harm to his litigation efforts resulting from denial of the item).  Actual injury requires that the inmate demonstrate that his "nonfrivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded."  *Lewis,* 518 U.S. at 353-55 (adding that the right to access the

18

court "does not guarantee [prisoners] the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims," that "[t]he tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement," and that "[i]mpairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration").   The plaintiff has not alleged or established any actual injury which would satisfy the *Lewis* standard.   Additionally, the undersigned notes that inmates in segregation may have their access to the law library limited to their legal deadlines. *See Harrington v. Holshouser,* 741 F.2d 66, 68-89 (4th Cir.1984) (finding that prison officials may restrict the use of library inmates on segregation to instances in which they have legal deadlines).   Therefore, the court finds that the plaintiff's allegations fail to state a denial of access to courts claim.

### iv.  Claims Regarding Conditions in SHU

The plaintiff alleges he was denied recreation and inmates are subjected to double celling while housed a the SHU at ASGDC which he alleges creates a unsafe environment. Specifically, the plaintiff alleges that while double celling may be reasonable in the regular population, in SHU with confinement twenty-four (24) hours a day, seven (7) days a week, it creates an unsafe condition for both the inmates and staff. (Compl. at 3.)

Prison conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452

U.S. 337, 347 (1981).  However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*. To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard.  *Wilson v. Seiter,* 501 U.S. 294, 297-99 (1991).  "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement."  *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir.1997).

As for the denial of recreation time, in general, prisoners should be permitted some regular out-of-cell exercise. *See Mitchell v. Rice*, 954 F.2d 187, 191-192 (4th Cir.1992).  However, the Fourth Circuit Court of Appeals has explained that it has "never held that denial of out-of-cell exercise opportunities is per se unconstitutional cruel and unusual punishment." *Id*. at 191.  It is a "totality of conditions" analysis.  *Id.*  In this case, the plaintiff lost the privilege of outdoor recreation as a part of the discipline imposed. Such is not objectionable for the period of time alleged, under the circumstances.  *See Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir.1997).  Moreover, the plaintiff has "come forward with no evidence that he has sustained any serious or significant physical or emotional injury as a result of these conditions." *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir.1993).  His mere allegations regarding the denial of recreation time are insufficient to state a cause of action.

20

As to the plaintiff's allegations regarding double celling, there is no evidence in the record that the plaintiff himself was ever double-celled while housed in SHU.  However, even if he was, this would not be a violation of his constitutional rights per se.  To prevail, the plaintiff must prove that the double celling combined with other substandard conditions of confinement "have a mutually enforcing effect that produce[d] the deprivation of a single, identifiable human need such as food, warmth, or exercise . . .," *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir.1991), or that the double celling created an unreasonable risk of serious damage to his health, and that the defendants deliberately disregarded that risk, *Helling v. McKinney*, 509 U.S. 25, 35-36 (1993).

The plaintiff's claims regarding double celling consists of entirely conclusory allegations that the defendants are double celling inmates creating an unsafe environment.  Conclusory allegations, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985).  Nor has the plaintiff alleged that he suffered any injury.

### v.  Failure to Respond to Grievances

To the extent that the plaintiff alleges a claim based upon the defendants' failure to respond to his grievances, this claim fails. Even if the defendants failed to respond to the plaintiff's grievances, the plaintiff has not stated a constitutional claim. The law is well-settled that there is no constitutional right to a grievance procedure.  *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-138 (1977).  Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action.  *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1944) (dismissing

plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure").

### v. Qualified Immunity

The defendants also contend they are entitled to qualified immunity in their individual capacities.  The undersigned agrees.

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), held that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818. Thus, determining whether an official is entitled to qualified immunity requires that the court make a two-step inquiry "in proper sequence."  *Parrish v. Cleveland,* 372 F.3d 294, 301-02 (4th Cir. 2004) (*quoting Saucier v. Katz*, 533 U.S. 194, 200 (2001)). As a threshold matter, the court must determine whether, taken in the light most favorable to the plaintiff, the facts alleged show the defendants' conduct violated a constitutional right. *Id.*  If the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and the plaintiff cannot prevail. *Id.* If the facts do establish such a violation, however, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. *Id.* In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Id.* "If the right was not clearly established in the 'specific context of the case'-that is, if it was not 'clear to a reasonable officer' that the

22

conduct in which he allegedly engaged 'was unlawful in the situation he confronted'-then the law affords immunity from suit." *Id.* (*quoting Saucier*, 533 U.S. at 201).

"Fourth Circuit precedent is one source for determining whether the law was clearly established at the time of the alleged violation." *Vathekan v. Prince George's County*, 154 F.3d 173, 179 (4th Cir.1998); *see also Edwards v. City of Goldsboro,* 178 F.3d 231, 251 (4th Cir.1999) (*quoting Jean v. Collins,* 155 F.3d 701, 709 (4th Cir.1998) (en banc)) ("In determining whether a right was clearly established at the time of the claimed violation, 'courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose . . . . ' ").

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d 295, 298 (4th Cir. 1992) (citations omitted). The undersigned cannot conclude that the defendants in this case "transgressed bright lines . . . [and] officials are not liable for bad guesses in gray areas." *Maciariello, supra.* Further, as discussed above, the plaintiff has failed to show that the defendants violated any of his clearly established constitutional or statutory rights.

23

## IV.  <u>CONCLUSION</u>

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. # 40) be GRANTED; the Plaintiff's Motion for Summary Judgment be DENIED (Dkt. # 52); and the complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED.


s/Bruce Howe Hendricks
United States Magistrate Judge

January 14,  2009
Greenville, South Carolina


**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).